## FORD MOTOR COMPANY

### v.

## OHIO MOTOR VEHICLE DEALERS BOARD.

[Cite as *Ford Motor Co. v. Ohio Motor Vehicle Dealers Bd.* (1996), 117 Ohio App.3d 25.]

· Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 96APD01–78.

Decided Dec. 24, 1996.

*Baker & Hostetler, George W. Hairston, Otto Beatty III* and *Elizabeth A. McNellie,* for relator.

*Betty D. Montgomery,* Attorney General, and *Chester T. Lyman, Jr.,* Assistant Attorney General, for respondent.

---

CLOSE, Judge.

This is an action in prohibition in which relator, Ford Motor Company ("Ford"), seeks to prohibit respondent, the Ohio Motor Vehicle Dealers Board ("the board"), from exercising jurisdiction over a termination protest which was filed by Phil A. Lloyd pursuant to R.C. 4517.54(C).

In March 1987, Ford and Western Ford–Mercury, Inc. ("Western") entered into a Sales and Service Agreement which established Western as an authorized Ford and Mercury dealer. Subsequently, Western entered into a Management Agreement with Lloyd–Mullinax, Inc. ("Lloyd–Mullinax"), a corporation jointly owned by Charles E. Mullinax and Phil A. Lloyd. Pursuant to the terms of the Management Agreement, Lloyd–Mullinax became the designated operator of Western, with full management authority and responsibility. Lloyd was elected Western's president, and Mullinax was elected vice-president. Sitting on the board of directors for Western were Lloyd, Mullinax, and three representatives of Ford Motor Company.

In June 1987, Ford and Lloyd–Mullinax, Inc. executed a Dealer Development Agreement which established the parties' respective interests in Western. This agreement gave Lloyd–Mullinax the right to acquire, over a period of time, relator's shares of Western's capital stock. At all times relevant here, however,

Ford owned a majority of the outstanding voting stock of Western. Neither Lloyd nor Mullinax owned any individual shares of capital stock in Western, and Lloyd–Mullinax owned only six hundred seventeen shares, which amounted to less than a thirty percent interest.

On March 23, 1995, apparently after Western's money ended up in Lloyd's personal account, Western's Board of Directors terminated the Management Agreement and removed both Lloyd and Mullinax from their employment. Lloyd's and Mullinax's relationship with Western was deemed terminated effective that same date. The Sales and Service Agreement was not terminated, and Western has continued to operate as a Ford dealership with an interim general manager as the day-to-day operator.

On April 13, 1995, Lloyd filed a protest, pursuant to R.C. 4517.54(C), purportedly as president and on behalf of Western. Lloyd, however, did not have any corporate authority to file a protest on behalf of Western. Ford moved to dismiss, alleging that Lloyd lacked standing to initiate a protest and that the board lacked subject matter jurisdiction to entertain the protest because Lloyd was not a "franchisee," as defined in R.C. 4517.01(W), and no "franchise" had been terminated, as defined in R.C. 4517.01(V). The hearing examiner determined that the board had jurisdiction over the protest and overruled Ford's motion to dismiss.

On January 22, 1996, Ford filed a complaint in prohibition seeking to prohibit the board from exercising jurisdiction over Lloyd's termination protest. The board moved to dismiss the complaint. After this court denied the motion to dismiss, the parties proceeded to stipulations and briefing. The board then issued an order affirming its jurisdiction and staying the proceedings of the hearing examiner pending this court's determination of Ford's request for a writ of prohibition.

■■■ The following three elements must be established in order for a writ of prohibition to issue: (1) the board must be about to exercise judicial or quasi-judicial power, (2) the exercise of that power must be unauthorized by law, and (3) refusal of the writ must result in an injury for which no other adequate legal remedy exists. *State ex rel. Albright v. Delaware Cty. Court of Common Pleas* (1991), 60 Ohio St.3d 40, 572 N.E.2d 1387, Where a judicial or quasi-judicial body patently and unambiguously lacks jurisdiction, however, it is unnecessary to prove the third element because lack of jurisdiction makes the availability of either an appeal or an injunction irrelevant. *Ohio Dept. of Adm. Serv., Office of Collective Bargaining v. State Emp. Relations Bd.* (1990), 54 Ohio St.3d 48, 53, 562 N.E.2d 125, 130–131. For reasons stated below, we find that the board patently and unambiguously lacks jurisdiction and may be prohibited from hearing the merits of Lloyd's termination protest. *State ex rel. Smith v. Frost* (1995), 74 Ohio St.3d 107, 109, 656 N.E.2d 673, 676.

At issue is whether Lloyd is a franchisee with standing to bring an R.C. 4517.54(C) protest, or whether he is merely an employee of a franchisee. Ford claims that Western is the official franchisee and that Lloyd's termination protest is simply an employment dispute. For this reason, Ford claims that Lloyd lacks standing to bring a protest action and the board lacks jurisdiction. Additionally, Ford claims that the board lacks subject matter jurisdiction because the franchise has not been terminated.

Pursuant to R.C. 4517.54(C), only a *franchisee* can initiate termination proceedings and, further, such proceedings may be initiated only when a *franchise* has been terminated. R.C. 4517.01(W) defines "franchisee" as "a person who receives new motor vehicles from the franchisor under a franchise agreement and who offers, sells, and provides service for such new motor vehicles to the general public." "Franchise" is defined as "any written agreement, contract, or understanding between any motor vehicle manufacturer or remanufacturer engaged in commerce and any motor vehicle dealer which purports to fix the legal rights and liabilities of the parties to such agreement, contract, or understanding." R.C. 4517.01(V).

The stipulated record reveals that Western, not Lloyd, was the franchisee and that no franchise was terminated. It is undisputed that the Sales and Service Agreement has not been terminated and that Western continues to operate as a Ford dealer. Western and Ford were the only signatories to the Sales and Service Agreement. What terminated was Lloyd's employment with Western. The documentary evidence is crystal clear that Lloyd was an employee of the franchisee, and that Western, not Lloyd, was the franchisee. Nowhere in R.C. Chapter 4517 does the board have authority to determine employment disputes. Under these circumstances, the board patently and unambiguously lacks jurisdiction to consider this protest.

As the proceedings under R.C. 4517.54(C) are quasi-judicial in nature (see *Slavin Ford, Inc. v. Ford Motor Co.* [Aug. 1, 1991], Franklin App. No. 91AP–354, unreported, 1991 WL 151252), a writ of prohibition is appropriate to prohibit the unauthorized consideration and determination of Lloyd's termination protest. This is not, as the hearing examiner found, a situation where the parties are circumventing the administrative appeal process. On the contrary, this is a situation where the exercise of jurisdiction is patently and unambiguously lacking.

A writ of prohibition will issue to prohibit the board from entertaining the protest filed by Lloyd.

*Writ of prohibition granted.*

PETREE, P.J., and LAZARUS, J., concur.